IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff* | § § § | |
| **-vs-** | § § | 6:23-CR-00135-ADA |
| **(1) DEONTE MARQUIS ROSS,** *Defendant* | § § | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 36)**

TO:   THE HONORABLE ALAN D ALBRIGHT,
      UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(c) and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court is Defendant's Motion to Suppress. ECF No. 36. The United States responded, and the Court held an evidentiary hearing on October 2, 2024. ECF No. 42; ECF No. 54. For the reasons discussed below, the undersigned **RECOMMENDS** that the Motion to Suppress be **DENIED**.

I.   **BACKGROUND FACTS**

Mr. Brown's case arises from a traffic stop. On June 12, 2023, Mr. Brown was the front-seat passenger in a car in Kileen, Texas. Kileen police officers pulled the car over because the driver failed to use his turn signal when changing lanes. The officers approached the car, and Officer Swan asked the driver for his license and registration. The officers talked with the driver

and the passenger for a few seconds and appeared to be wrapping up the traffic stop. Officer Swan, who had not yet received the requested driver's license, stated "we're outta here." Before he could turn and walk away, however, Officer Wilt gestured and commented, "ID cards." At that point, Officer Swan got the driver's license information, and Officer Wilt got Mr. Ross's and the back seat passenger's information. When the officers ran Mr. Ross's information, it came back that he had an outstanding warrant. Mr. Ross was arrested because of that warrant, searched as part of his arrest, and admitted that he had a firearm, which the officers obtained.

Mr. Ross is facing charges for possession of a firearm by a convicted felon because of that search. Mr. Ross has a prior felony conviction that disqualifies him from possessing a firearm. As a result on June 15, 2023, Mr. Ross was charged by a criminal complaint with a violation of 18 U.S.C. § 922(g)(1). On July 11, 2023, a grand jury returned an indictment for indicted for violation of 18 U.S.C. § 922(g)(1) and 924(a)(8).

The key dispute is whether the initial traffic stop was completed before Officer Wilt requested Mr. Ross's identification information. Mr. Ross contends that the initial traffic stop was complete before then, which made the request for Mr. Ross's identification and his subsequent arrest part of a new, unconstitutional detention under *Terry*. The government disagrees and contends that the initial traffic stop was not complete and the request for Mr. Ross's identification was permissible as part of the initial traffic stop and detention. At the hearing, counsel for the Government conceded that if the initial stop was complete before Officer Wilt asked Mr. Ross for his license there was no basis for a second detention.

At the hearing the Court received testamentary and documentary evidence. The Government called Officer Swan as a witness, and Officer Swan testified to the facts surrounding the traffic stop and arrest of Mr. Ross. The government also offered three exhibits—

Officer Swan's Body Camera footage (Gov. Ex. 1), Officer Wilt's Body Camera footage (Gov. Ex. 2), and the Dash Cam footage (Gov. Ex. 3)—and all three were admitted without objection. Mr. Ross offered one exhibit—the Kileen Police Department Incident Sheet (Def. Ex. 1)—which was admitted under seal for purposes of the suppression hearing only and without objection.

The following is a timeline of relevant events as determined by a review of the body camera and dash camera videos and their included timestamps:

- 18:40:35–The car Mr. Ross is riding in moves into the turn lane without signaling. (Gov. Ex. 3)

- 18:41:22-23–Officer Swan pulls the car over. (Gov. Ex. 3); Officers Swan and Wilt step out of the patrol car. (Gov. Ex. 1; Gov. Ex. 2)

- 18:41:37-38–Officer Swan arrives at the driver's window and asks for license and registration. (Gov. Ex. 1); Officer Wilt arrives at the passenger window. (Gov. Ex. 2)

- 18:41:59–Officer Swan asks the driver, "Have we met before?" (Gov. Ex. 1)

- 18:42:43-47–Officer Swan tells the driver, "Make sure to use your turn signals. We're gonna get outta here. Drive safe." (Gov. Ex. 1); (Gov. Ex. 2)

- 18:42:47-48–Officer Wilt says, "ID cards." (Gov. Ex. 2); The dash camera shows Officer Wilt step toward the car and gesture above the car with his right-hand index finger and thumb. (Gov. Ex. 3)

- 18:42:49–Officer Swan steps toward the driver's door and asks, "Let me have your IDs real quick, first though" (Gov. Ex. 1)

- 18:43:03–Officer Wilt asks passengers for IDs. (Gov. Ex. 2)

- 18:43:24–Mr. Ross hands Officer Wilt his driver's license. (Gov. Ex. 2)

- 18:45:30–Officer Swan gets the passenger information from Officer Wilt and returns to the patrol car to check for warrants. (Gov. Ex. 1)

- 18:50:3–Officer Wilt asks Mr. Ross to step out of the car. Then tells him he might have a warrant out of Dallas County. (Gov. Ex. 2)

3

## II.     APPLICABLE LEGAL STANDARD.

Both parties agree that the Fourth Amendment applies to traffic stops and that the stop must satisfy the two-part test of *Terry v. Ohio*. ECF No. 36 at 3 (citing *United States v. Reyes*, 936 F.3d 482, 487 (5th Cir. 2020), *Terry v. Ohio*, 392 U.S. 1 (1968)); ECF No. 42 at 3 (citing *U.S. v. Valadez*, 267 F.3d 395, 397, (5th Cir. 2001), *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). The first part of *Terry* requires the stop to be justified at its inception such that there must be a particular and objective basis for suspecting that the person stopped broke the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Second, the inquiry must be reasonably related to the reason for the stop. *Terry*, 392 U.S. at 19-20; *U.S. v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Tasks reasonably related to a traffic stop include checking the driver's license, proof of insurance, and registration, and checking for any outstanding warrants against the driver. *Rodriguez v. U.S.*, 575 U.S. 348, 355 (2015). Within the Fifth Circuit, these checks can also include identification and warrant checks for all vehicle passengers. *See* ECF No. 36 at 4 (citing *U.S. v. Pack*, 612 F.3d 341, 351 (5th Cir. 2010))[1]; ECF No. 42 at 5.

Both parties agree, that to prolong a stop beyond the tasks tied to the initial traffic stop requires a new reasonable suspicion of a crime to satisfy the two-part *Terry* test anew. ECF No. 36 at 4 (citing *U.S. v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004*); U.S. v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006)); ECF No. 42 at 4 (citing *U.S. v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020)). Deciding whether a traffic stop has concluded—and a new reasonable basis must be articulated—requires considering all the facts and circumstances around the stop. *U.S. v.*

---

[1] Mr. Ross notes that the Ninth Circuit, unlike the Fifth Circuit, does not consider checking passengers for warrants, to be tasks tied to the traffic stop. *See* ECF No. 36 at 4 n.4 (citing *U.S. v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019)). As also noted by Mr. Ross, however, that argument is contrary to Fifth Circuit law, which this Court must follow. *See Pack*, 612 F.3d at 351. The Court declines Mr. Ross's offer of additional briefing on that issue.

*Brigham*, 382 F.3d 500, 507-07 (5th Cir. 2004). There is no hard rule for how long a stop may last or magic phrase that determines whether it is complete. Rather, the Court must decide whether the officers' actions were reasonably related to the reason for the stop looking at the totality of the circumstances surrounding the stop. *Id.*; *see also U.S. v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020) (holding that there are not hard time limits for stops, just that they be no longer than necessary to carry out the reason for the stop).

The crux of the present Motion to Suppress is whether the initial traffic stop had concluded before the officers requested Mr. Ross's identification. Mr. Ross contends that the stop was complete, and the officers needed a new reasonable suspicion of criminal conduct before they could detain Mr. Ross and request his identification. ECF No. 36 at 4 (citing *Terry*, 392 U.S. at 19-20.). The Government disagrees and contends that the officers were still conducting the original traffic stop when they asked for Mr. Ross's identification. ECF No. 42 at 4. At the hearing on the Motion to Suppress, the Government conceded that it had no basis for an additional or extended stop if the Court determines that the original stop had concluded before Officer Wilt asked for Mr. Ross's identification. Thus, the Court must determine from the totality of the circumstances whether the original stop had concluded or not, and grant or deny the Motion to Suppress accordingly. *See generally Brigham*, 382 F.3d 500, 506-07 (5th Cir. 2004) (holding that evaluating the second part of the test under *Terry* requires consideration of the facts and circumstances surrounding the stop).

### III.    DISCUSSION AND ANALYSIS.

Officer Swan stopped the vehicle Mr. Ross for a lawful reason. Officer Swan testified that he stopped the vehicle because it changed lanes without signaling. The improper lane change can be seen on the dash camera video. Gov. Ex. 3 at 18:40:35. Officer Swan pulls the car over

within minutes of the improper lane change. *Id.* at 18:41:23. The failure to signal a lane change is a violation of Texas law and gave Officer Swan a valid reason to stop the vehicle. It also satisfied the first part of the *Terry* test as the traffic stop "was justified at its inception." *See Terry*, 392 U.S. at 19-20. Mr. Ross does not dispute that the initial stop of the vehicle was lawful. ECF No. 36 at 3 n.3.

After stopping the vehicle Officer Swan engaged in a lawful investigation. Within a minute of pulling over the car, Officer Swan approached the driver and asked for the driver's license and registration. Gov. Ex. 1 at 18:41:38. Requesting that information is part of a standard traffic stop and satisfies the second part of the *Terry* test. *Brigham*, 382 F.3d at 507-08. At the same time, Officer Wilt approached the passenger side of the vehicle. Gov. Ex. 2 at 18:41:37. Officer Swan recognized the driver and began chatting with the driver about where he knew him from. Gov. Ex. 1 at 18:41:59 (Officer Swan asking the driver, "Have we met before?"). After a brief conversation that lasted less than a minute, Officer Swan said, "Make sure to use your turn signals. We're gonna get outta here. Drive safe." *Id.* at 18:42:46.

From the totality of the circumstances, however, the purpose of the traffic stop was not complete. Despite his earlier request, Officer Swan had not gotten the driver's license or registration information. Officer Swan testified that when he made the comment "we're outta here," Officer Wilt made a hand signal and comment that made it clear that Officer Wilt was not ready to terminate the traffic stop. That comment and hand signal can be seen in the exhibits where immediately after Officer Swan said, "we're outta here," Officer Wilt said, "ID cards" and gestures to Officer Swan above the vehicle. Gov. Ex. 2 at 18:42:47 (Officer Wilt body camera video); Gov. Ex. 3 at 18:42:48 (dash camera video). The moment Officer Wilt reminds Officer Swan that they need to check identification, both officers were still standing immediately beside

6

the car and neither had moved any farther back than the rear passenger windows. Gov. Ex. 1 at 18:42:49; Gov. Ex. 2 at 18:42:47; Gov. Ex. 3 at 18:42:48. Officer Swan immediately steps closer to the driver's door and says, "Let me have your IDs real quick, first though." Gov. Ex. 1 at 18:42:49. From the moment Officer Swan said "we're outta here" until he asked for the "IDs real quick, first though" no more than three seconds passed. Officer Swan's initial request for a driver's license, Officer Wilt's reminder about IDs, and Officer Swan's immediate request for IDs demonstrate that the initial traffic stop had not ended.

Officer Swan's initial investigation was not complete. Officer Swan had not received the driver's license or registration that he asked for, and he had not checked for any outstanding warrants for the driver or that the car was properly registered. Similarly, Officer Wilt had not requested or obtained the passenger's driver's license or identification information and had not checked the passengers for any outstanding warrants. Both Mr. Ross and the Government agree that under Fifth Circuit law, requesting identification from everyone in a car and conducting a search for outstanding warrants are all reasonably related to a traffic stop. *Pack*, 612 F.3d at 350; *Brigham*, 382 F.3d at 507-08.

Officer Swan also testified that checking identification of all vehicle occupants for outstanding warrants is mandatory. He testified that the State of Texas mandates it, and the Killeen Police Department requires it under its standard operating procedures. Further, as Officer Swan testified even though he recognized the driver from a prior stop, without identification Officer Swan could not check for any warrants that might have issued since the last encounter. So even if Officer Swan recognized the driver, an identification check was still necessary as part of the traffic stop. Similarly, an identification check of Mr. Ross was necessary as well.

Officer Swan also testified that neither officer could unilaterally terminate the traffic stop. Officer Swan testified that he had been with the Violent Crimes Action Team less than one month, and Officer Wilt, who was Officer Swan's supervisor, was providing guidance and training during the stop. Additionally, Officer Swan testified that the officers approach the cars from opposite sides so they could see everything in the vehicle. Neither officer could unilaterally terminate the stop because the other officer might have seen something on the other side car that required investigation. Officer Swan testified that when Officer Wilt made a hand signal and commented "ID cards" it was clear that Officer Wilt was not ready to terminate the traffic stop. And as both parties agree, checking everyone in a vehicle for warrants is permitted as part of a traffic stop in the Fifth Circuit. *Pack*, 612 F.3d at 351.

Considering all of the facts and circumstances surrounding the traffic stop, the Court is persuaded that the traffic stop had not concluded before the officers asked for and received Mr. Ross's driver's license. Considering the totality of the circumstances, the Court is persuaded that the traffic stop had not terminated. The request for Mr. Ross's driver's license, his warrant check, and his search and arrest in light of an outstanding warrant were lawful.

## IV.    RECOMMENDATION

For the above reasons, the Court **RECOMMENDS** that Mr. Ross's Motion to Suppress (ECF No. 36) be **DENIED**.

The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that

party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(l)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).

SIGNED this 12th day of October, 2024.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE